## JIM RHODES V. THE STATE.

No. 22977. Delivered December 13, 1944.
Rehearing Denied January 24, 1945.

The opinion states the case.

*W. R. Parker,* of Fort Worth, for appellant.

*Marvin H. Brown, Jr.,* Dist. Atty., and *M. Hendricks Brown,* Asst. Dist. Atty., both of Fort Worth, and *Ernest S. Goens,* State's Attorney, of Austin, for the State.

GRAVES, Judge.

Appellant was convicted of murder without malice, and given a sentence of five years in the penitentiary.

Appellant, a negro, was the operator of the Zig-Zag cafe in the negro section of Fort Worth, and was convicted of the killing without malice of Huddie Lee Banks, an eighteen-year-old negro boy, on November 1, 1943. The State's testimony shows that the deceased was shot in the left side with a shot gun while he was standing at a Victrola in appellant's café. Deceased had on his person a rather dangerous knife, so described by the witnesses, and appellant claimed that deceased was making a demonstration therewith at the time he was shot and he thought he was being attacked. Appellant contended that the deceased, together with companions, had prior thereto molested him in the conduct of his business, and on account of deceased's drunken condition appellant had refused to sell deceased any more beer. That this angered the deceased and caused him to make an attack upon appellant, and appellant was

forced to kill deceased in his own self-defense. All these facts were presented to the jury and decided against such plea.

There are but two bills of exceptions in the record, both of which relate to the same action upon the part of the trial court. Immediately upon the shooting of the deceased appellant closed and locked his cafe and repaired to a neighboring store, and communicated with the police. The officers soon arrived, and, in company with appellant, they immediately went to his cafe, which appellant unlocked and he there showed them the body of the deceased lying on the floor. Officer McDaniel testified that he and his partner were the first officers at the scene, and when he first saw appellant at the neighboring store he smelled beer on his breath, and later on, at the cafe where the deceased body lay, appellant drank two bottles of beer. The testimony regarding the drinking of the last two bottles of beer is the basis of these bills, bill No. 1 relating to the admission of such testimony, and bill No. 2 relating to the trial court's failure to instruct the jury to not consider such testimony. .

It is noted that appellant in his direct examination testified, among other things, as follows: "I felt just as sober that night as I am now, because I didn't drink anything to get drunk off of. If I was drunk, I was drunk for excitement because I hadn't drank a drop of nothing." The State had showed by Mr. Brooks that when appellant was brought to the police station he smelled some kind of alcoholic beverage upon his breath; that he thought he was drunk; it also showed by Mr. McDaniel as well as Mr. Warren that when they first found appellant at the store of Mr. Matthews they smelled an alcoholic beverage upon his breath; the State also showed by another witness that appellant had been doing some drinking the afternoon of the killing.

There was no objection to the testimony of Mr. Warren, nor any objection to the testimony of Mr. Brooks as to the scent of liquor at the police station, which was after the arrest by officers McDaniel and Warren. The statement by McDaniel that while in the cafe of appellant, where he had been directed by appellant, and in the presence of the dead body, appellant drank two bottles of beer, could have been beneficial to appellant in that it could have been utilized in accounting for his condition at the police station, as testified to by Brooks, and could have been used by the jury as the probable basis of his intoxicated condition at the station. At the time of the drinking of the two bottles of beer, however, appellant was in the act of leading the

officers to the scene of the killing and pointing out to them the dead body, and such action relative to the beer might have had some bearing on the condition of appellant's mind with regard to malice which was an integral part of the herein charged offense.

We are unwilling to say that this testimony was of such a damaging character as to call for a reversal of this case. A ruling on bill No. 1 necessarily carries with it a like ruling on bill No. 2, which is merely concerned with the overruling of a motion upon the part of appellant's attorneys to instruct the jury not to consider the testimony relative to the drinking of the two bottles of beer by appellant.

The judgment is therefore affirmed.

### ON APPELLANT'S MOTION FOR REHEARING.

BEAUCHAMP, Judge.

We have reviewed the record of this case in the light of the very insistent motion for rehearing and are of the opinion that the case was correctly disposed of and that the motion should not be granted. Nothing is presented in the motion which was not carefully considered on the original submission.

Motion for rehearing is overruled.